IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

VANGURA KITCHEN TOPS, INC. d/b/a
VANGURA SURFACING PRODUCTS,
VANGURA LAMINATED PRODUCTS,

        Plaintiff,

     v.

C&C NORTH AMERICA, INC. t/d/b/a
TACOM, INC t/d/b/a TACOM, CORP.,
ROBERTO E. CONTRERAS, JR., AMERICAN
SILESTONE AND GRANITE, INC.
CONTINENTAL U.S.A. KITCHENS & BATH,
INC.,

        Defendants.

08cv1011
**ELECTRONICALLY FILED**

**MEMORANDUM OPINION**

**I.    Introduction.**

Before the Court is Defendants' Joint Motion to Dismiss for Improper Venue or in the Alternative, Motion to Transfer Action (doc. no. 24) ("Joint Motion to Dismiss or Transfer") based primarily on a forum selection clause contained in the Distribution Agreements[1] for the exclusive distribution of man-made stone slab surfacing products (now known and hereinafter referred to as "Silestone Products"[2]) executed by and between plaintiff Vangura Kitchen Tops, Inc., d/b/a Vangura Surfacing Products, Vangura Laminated Products (hereinafter "Vangura") and defendant C&C North America, Inc. t/d/b/a Tacom, Inc. and Tacom Corporation (hereinafter "Tacom"). Defendants jointly move this Court to dismiss Vangura's Complaint for improper

---

[1] There are several related distribution agreements or amendments between Vangura and Tacom which the Court refers to, collectively, as the Distribution Agreements.

[2] Silestone Products also goes or has gone by other names, including "Vanite," "Avanza," and "Formica Stone."

venue pursuant to Fed. R. Civ. P. 12(b)(3) and 1406(a), or, alternatively, if outright dismissal is not granted, defendants request that this Court transfer these proceedings to the United States District Court for the District of Minnesota as the more convenient forum, pursuant to 28 U.S.C. §1404(a).

After thorough and extensive briefing, oral argument and careful consideration of defendants' Joint Motion to Dismiss or Transfer, plaintiff's response thereto, and the briefs and materials in support and in opposition, the Court will deny defendants' Joint Motion to Dismiss or Transfer. Although there are several steps and nuances in the venue analysis in this case, ultimately, it is not a close call. The Court finds that venue has been properly laid in the Western District of Pennsylvania, that the District of Minnesota is not a district in which the action "might have been brought" within the meaning of section 1404(a), and that this district is, by far, the most appropriate venue in which to proceed.

**II.     Background.**

**A. The Complaint.**

Vangura asserts that, pursuant to the Distribution Agreements, it successfully marketed and sold Silestone Products in Home Depot and Loews stores in Western Pennsylvania, West Virginia and Ohio, as well as with many other contractors, distributors, retailers and vendors. Complaint, ¶ 14. Defendants Roberto E. Contreras, Jr., American Silestone and Granite, Inc. (hereinafter "American Silestone") and Continental U.S.A. Kitchens & Bath, Inc. (hereinafter "Continental Kitchens") are all alleged to have conspired with Tacom and with one another, and to have tortiously interfered with said Distribution Agreements and with prospective contractual relations with others parties. The Complaint summarizes the alleged wrongdoings that

2

precipitated the action in an introductory paragraph, which states:

> This action arises out of Tacom's wrongful interference with the product service and distribution opportunities that Vangura contractually acquired pursuant to various distribution agreements with Tacom. Not only has Tacom directly undermined the exclusive distribution rights afforded to Vangura, it has also acted in concert with other of its distributers, including, American Silestone and Continental Kitchens, to improperly usurp the marketplace Vangura has fostered in its exclusive distribution territories. Vangura brings this action seeking to enjoin the Defendants from further violating its ongoing contract rights and for damages intended to restore Vangura to the position it would have been in had its rights not been so violated.

Complaint (doc. no. 1), Introduction, ¶ 1.

Plaintiff claims jurisdiction on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332. Specifically, plaintiff asserts that the amount in controversy is in excess of $75,000 and that the citizenship of the parties is diverse; said citizenship is stated as, respectively, Pennsylvania (Vangura), Delaware (Tacom, Contreras, a principal and officer of Tacom,[3] and American Silestone), and Virginia (Continental Kitchens). Complaint, ¶¶ 2-7.

Vangura's Complaint states four causes of action: Count I, Breach of Contract against Tacom; Count II, Tortious Interference with Contract [the Vangura-Tacom Distribution Agreements] against Continental Kitchens and American Silestone; Count III, Tortious

---

[3] Defendants do not challenge subject matter, diversity jurisdiction. Plaintiff alleges the corporate entities are incorporated and have principle places of business in the states indicated, 28 U.S.C. 1332(c)(1), but does not actually specify individual defendant Contreras' state of citizenship, only that he is a principal and officer of Tacom involved in its business operations, and that the citizenship of all defendants is diverse from that of plaintiff, Pennsylvania. Subsequent briefing and affidavits do not establish Mr. Contreras's state of citizenship to a certainty, but Texas is a likely candidate. No one suggests, however, that he is a citizen of Minnesota, or of Pennsylvania which would present a problem for diversity jurisdiction. *See Midlantic Nat'l Bank v. Hansen*, 48 F.3d 693, 696 (3d Cir. 1995) (it is well settled that, in order to sustain diversity jurisdiction, all of the parties on one side of the controversy must be citizens of different states than all of the parties on the other side). There is no dispute that the parties are diverse and that the amount in controversy exceeds the jurisdictional limit.

Interference with Prospective Contract Relations against all Defendants; Count IV, Civil Conspiracy against all Defendants. The factual basis for the lawsuit is contained in 73 numbered paragraphs, Complaint, ¶¶ 1-73, including 28 paragraphs set forth in a section entitled "Tacom's Breaches of Contract." Complaint, ¶¶ 45-73. Plaintiff has framed the genesis of the dispute as a breach of contract, and references the Distribution Agreement throughout its Complaint. However, defendants point out that the Complaint does not mention the unambiguous venue selection and choice of law provision found in paragraph 35 of the initial Distribution Agreement, which is the cornerstone of defendants' Joint Motion to Dismiss or Transfer. Paragraph 35 states:

> 35. Governing Law. This Agreement shall be governed, construed and interpreted [sic] accordance with the laws of the State of Minnesota in the United States. Any claim or action for breach of this Agreement shall be brought in United States District Court, District of Minnesota, and the parties hereto consent to the jurisdiction of such Court.

Complaint (doc. no. 1), Distribution Agreement, Exhibit 1, at ¶ 35.

The Complaint also alleges Continental Kitchens and American Silestone intentionally interfered with Vangura's exclusive territorial contract rights under the Distribution Agreements with Tacom with regard to plaintiff's Pennsylvania customers, including Home Depot and Lowes stores, and with Vangura's prospective business relations with other distributors, vendors, contractors and retailers in Pennsylvania, West Virginia, Ohio and the Distribution Territory, including named businesses in Western Pennsylvania. Complaint, ¶¶ 46-60, 82-84, 88-90.[4]

---

[4] The Court rejects defendants' inaccurate portrayal of Vangura's tort claims as mere "artful pleading" designed to avoid the forum selection clause. Although related to the breach of contract claim (against Tacom only), plaintiff's tort claims against all defendants are direct, specific and, considering the facts in the light most favorable to plaintiff, genuine causes of action that are legally and factually distinct from the breach of contract claim.

4

Additionally, Vangura complains that Tacom failed to honor its "most favored" pricing agreement which contractually guaranteed a price at least five percent less than the price charged to any other Tacom distributors. Complaint, ¶¶ 29, 62.

**B.  The Joint Motion to Dismiss or Transfer.**

In their Joint Motion to Dismiss or Transfer, defendants argue that the case should be dismissed pursuant to 28 U.S.C. § 1406(a) and Fed.R.Civ.P. 12(b)(3) because the forum selection clause renders Pennsylvania an improper venue for this litigation.  Alternatively, defendants argue that this Court should transfer the case to the United States District Court of Minnesota as the more convenient forum, pursuant to 28 U.S.C. § 1404(a).  In their Joint Motion to Dismiss or Transfer, American Silestone and Continental Kitchens expressly "consent to the jurisdiction of the Minnesota court" and argue, therefore, that "the entire case may properly be transferred to the District of Minnesota."  Defendants' Joint Motion to Dismiss or Transfer, at 2, n. 2.  Defendants appear, implicitly, to acknowledge that Minnesota would not have jurisdiction over American Silestone and Continental Kitchens in the absence of their voluntary consent, although subsequent briefs and supporting materials assert Minnesota's jurisdiction and venue over all of the defendants without regard to their consent.

**III.    Venue Standards.**

**A.  28 U.S.C. Section 1391.**

Generally, venue is governed by 28 U.S.C. § 1391, which provides, in relevant part:

> Venue generally.
>
> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same

State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

* * *

(c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. . . .

28 U.S.C. § 1391(a) and (c) (emphasis added).

### B. 28 U.S.C. Sections 1404(a) and 1406(a).

The two statutory provisions governing the Joint Motion to Dismiss or Transfer provide, in relevant part:

§ 1404(a): Venue: Change of venue

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division *where it might have been brought.*

§ 1406(a): Venue: Cure or waiver of defects

(a) The district court of a district in which is filed *a case laying venue in the wrong* division or *district* shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. §§ 1404(a) and 1406(a) (emphasis added).

In *Lafferty v. St. Riel*, 495 F.3d 72 (3d Cir. 2007), the United States Court of Appeals for the Third Circuit recently explained the interplay between sections 1404(a) and 1406(a):

A. Venue Transfers under 28 U.S.C. §§ 1404(a) & 1406(a).

Distinctions between § § 1404(a) and 1406(a) have to do with discretion, jurisdiction, and choice of law. Section 1404(a) transfers are discretionary determinations made for the convenience of the parties and presuppose that the

6

> court has jurisdiction and that the case has been brought in the correct forum. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995); 17A Moore's Federal Practice, § 111.02 (Matthew Bender 3d ed. 2006). Faced with a choice-of-law question, federal courts in the district to which the case has been transferred under § 1404(a) must apply the law of the transferor state. See *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964) (for defendant-initiated § 1404(a) transfers); *Ferens* [*v. John Deere Co.*, 494 U.S. 516, 527-28 (1990)] (extending the *Van Dusen* rule to all § 1404(a) transfers, whether initiated by plaintiff or defendant).
>
> *Section 1406(a) comes into play where plaintiffs file suit in an improper forum. Jumara*, 55 F.3d at 878; Moore's Federal Practice, supra, § 111.02. In those instances, district courts are required either to dismiss or transfer to a proper forum. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465-66 (1962) (emphasizing that federal district courts may transfer- rather than dismiss- cases that plaintiffs initially brought in an improper forum, regardless whether they otherwise have personal jurisdiction). When cases have been dismissed for improper venue, plaintiffs in those cases must file anew in a proper forum. See Moore's Federal Practice, supra, § 111.03. . . . When cases have been transferred for improper venue, transferee courts generally apply the substantive law they would have applied had the action been brought there initially. . . .

*Lafferty*, 495 F.3d at 76-77 (emphasis added; parallel and certain additional citations omitted).

**C. Federal Rules of Civil Procedure.**

Although as a general rule, motions to dismiss for improper venue are entertained under Fed.R.Civ.P. 12(b)(3), the United States Court of Appeals for the Third Circuit has held that dismissal under Rule 12(b)(6) is proper where a forum selection clause designates another court as the exclusive venue for litigation. *Salovaara v. Jackson National Life Ins. Co.*, 246 F.3d 289, 298-299 (3d Cir. 2001). See *Integrated Health Resources, LLC v. Rossi Psychological Group*, 537 F.Supp.2d 672, 674 (D.N.J. 2008). Traditionally, when deciding a Rule 12(b)(3) motion to dismiss for improper venue, a court must accept as true the allegations in the complaint, although the parties may submit affidavits to support their positions. *Leone v. Cataldo*, --- F.Supp.2d ----, 2008 WL 3495634, *9 (E.D.Pa. 2008). In a motion to dismiss for improper venue, the

defendant, as the moving party, bears the burden of showing that venue is improper. *Id.*, citing *Myers v. American Dental Assoc.*, 695 F.2d 716, 724 (3d Cir. 1982); *Lewis v. Commonwealth of Pennsylvania,* 2007 WL 1247076, *2 (W.D.Pa. 2007); *Cumberland Truck Equip. Co. v. Detroit Diesel Corp.*, 401 F.Supp.2d 415, 418 (E.D.Pa. 2005).

In evaluating a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citations omitted). "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . .'" *Id*. at 232, quoting *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, ----, 127 S.Ct. 1955, 1965 (2007). In other words, the plaintiff must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action, and "showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Phillips*, 515 F.3d at 233, 234 and quoting *Twombly*, 127 S.Ct. at 1964. In ruling on a Rule 12(b) (6) motion to dismiss, the district court may consider documents "integral to or explicitly relied upon in the complaint." *In re Rockefeller Sec. Lit.*, 184 F.3d 280, 287 (3d Cir. 1999).

The moving party bears the burden of proving that venue is proper in the transferee district and that convenience and justice would be served by transferring the action to that other district. *Jumara*, 55 F.3d at 879; *Shutte*, 431 F.2d at 25.

**D. Forum Selection Clauses.**

"In federal court, the effect to be given a contractual forum selection clause in diversity

cases is determined by federal law." *Jumara*, 55 F.3d at 877. Such a clause is "treated as a manifestation of the parties' preferences as to a convenient forum," and while the parties' agreement on the most proper forum "should not receive dispositive weight," it is entitled to "substantial consideration." *Id.* at 880. "Thus, while courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue." *Id.*

As stated by the Supreme Court of the United States, "[f]orum selection clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). "A forum selection clause is 'unreasonable' where the [party opposing the selected forum] can make a 'strong showing' either that the forum selection clause is 'so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court,' or that the clause was procured through 'fraud or overreaching.'" *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1219 (3d Cir. 1991), quoting *M/S Bremen*, 407 U.S. at 15. "[M]ere allegation of fraudulent conduct does not suspend operation of a forum selection clause. Rather, the proper inquiry is whether the forum selection clause is the result of 'fraud in the inducement of the [forum-selection] clause itself.'" *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967). Mere inconvenience or additional expense is not the test of unreasonableness, since it may be assumed that the plaintiff received, under the contract, consideration for these things, regardless of whether or not the clause was the result of bargaining between the parties. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-94 (1991).

Generally, "pleading alternative, non-contractual theories is not enough to avoid a forum

9

selection clause if the claims arise out of the contractual relationship and implicate the contract." *Crescent Intern., Inc. v. Avatar Communities, Inc.*, 857 F.2d 943, 944 (3d Cir. 1988), citing, *inter alia*, *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir.), *cert. denied*, 464 U.S. 938 (1983) ("If forum selection clauses are to be enforced as a matter of public policy, that same public policy requires that they not be defeated by artful pleading of claims such as negligent design, breach of implied warranty, or misrepresentation. Coastal's claims ultimately depend on the existence of a contractual relationship between Tilghman and Farmer Norton, and those parties bargained for an English forum. We agree with those courts which have held that where the relationship between the parties is contractual, the pleading of alternative non-contractual theories of liability should not prevent enforcement of such a bargain.").

Where, as here, a forum selection clause is only applicable to claims against one of multiple parties, by its terms such clause does not supply venue over claims sounding in tort against third parties. *Novacare, Inc. v. Strategic Theracare Alliance*, 1999 WL 259848, *3 (E.D.Pa. 1999) ("The forum selection clause was included in, at most, three of the Guarantees. There are eleven Defendants in this case, all residents of California, and to assume jurisdiction over each one by virtue of two or three forum selection clauses would be undoubtedly unreasonable. For this reason, this Court sides with Defendants contention that a finding of personal jurisdiction by virtue of the forum selection clauses included in some of the Guarantees would be 'unreasonable.'"). However, claims against third parties that are "closely related" to the claims for breach of the contract containing the forum selection clause may afford venue over such closely related claims, but this is a narrow rule. See *Coastal Steel Corp.* (a forum selection clause could properly be enforced against intended third party beneficiary to contract containing

10

said clause, consistent with the common law of contracts).

## IV. Application.

### A. Section 1406(a).

As noted, 28 U.S.C. § 1406(a) comes into play only where a plaintiff files suit in an *improper* venue. *Lafferty*, 495 F.3d at 76, citing *Jumara*, 55 F.3d at 878. Under the general venue statute, an action based upon diversity of citizenship is properly filed "in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(a)(2). Vangura is a Pennsylvania citizen, and a substantial part of the events or omissions giving rise to the breach of contract and tort claims are alleged to have taken place in Pennsylvania, in addition to Ohio, West Virginia and other surrounding states in the Distribution Territory. There can be no serious dispute that Pennsylvania is a proper forum under section 1391(a)(2).

Defendants incorrectly argue that Pennsylvania is not an appropriate venue because of the forum selection clause which designates Minnesota as the forum for resolving any claim or action for breach of the Distribution Agreements between Vangura and Tacom. The determination of whether Pennsylvania is a proper forum must be made without regard to any forum selection clause.

Federal law (namely 28 U.S.C. §§ 1391, 1404(a) and 1406(a)) governs the district court's decision whether to grant a motion to transfer a diversity case to the venue provided in a contractual forum selection clause, and this determination is to be made "ignoring the forum selection clause." *Jumara*, 55 F.3d at 878-79, citing *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 n. 8 (1988). See also *Salovaara*, 246 F.3d at 298 ("where venue would be proper

in the initial forum court, provided no forum selection clause covered the subject matter of the lawsuit, it is inappropriate to dismiss pursuant to 28 U.S.C. § 1406."), citing *Jumara*, 55 F.3d at 878-79; *Feldman v. Google, Inc.*, 513 F.Supp.2d 229, 244-45 (E.D.Pa. 2007) (where district court in which lawsuit is filed has venue over claims, motion to dismiss under section 1406(a) properly denied despite existence of forum selection clause designating another district as appropriate venue; effect of forum selection clause must be assessed in context of section 1404(a) motion to transfer); *Re-Source America, Inc. v. Corning Inc.*, 2007 WL 174714, *3 (D.N.J. 2007) ("Without considering the forum selection clause, venue in New Jersey is proper venue under § 1391. . . . [B]ecause venue is proper in New Jersey, disregarding the forum selection clause, outright dismissal is inappropriate. Instead, the procedural vehicle for enforcement of the forum selection clause should be a motion to transfer the case to the Western District of New York under 28 U.S.C. § 1404(a)."), citing *Ricoh Corp.*, 487 U.S. at 29 n.8, *Jumara*, 55 F.3d at 877-78, and *Salovaara*, 246 F.3d at 297; *Barbuto v. Medicine Shoppe Int'l., Inc.*, 166 F.Supp.2d 341, 347-48 (W.D.Pa. 2001) ("We reject defendant's argument that the original venue is improper because the forum selection clause specifies litigation elsewhere. This is not the applicable legal standard. Our Court of Appeals has clearly stated that 'where venue would be proper in the initial forum court, provided no forum selection clause covered the subject matter of the lawsuit, it is inappropriate to dismiss pursuant to 28 U.S.C. § 1406.'" ), quoting *Salovaara*, 246 F.3d at 298.

Since venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2), defendants' Joint Motion to Dismiss or Transfer must be denied insofar as it seeks dismissal or transfer under Section 1406(a) and Rule 12(b)(3). Thus, if transfer is to be made, it must based on the

convenience of the respective parties and witnesses and in the interest of justice, and it can only be to a "district . . . where it might have been brought" in the first instance. 28 U.S.C. § 1404(a).

**B. Section 1404(a).**

**1. District "where it might have been brought."**

Our Court of Appeals has narrowly interpreted "where it might have been brought." In *Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3d Cir. 1970), the district court's transfer order merely recited its conclusion that the transfer was appropriate for the convenience of parties and witnesses in the interest of justice, in light of all of the circumstances. Rejecting the district court's analysis, the Court of Appeals explained:

> No mention was made of Subsection 1404(a)'s *limiting provision* to the effect that a transfer is authorized by the statute *only if the plaintiff had an 'unqualified right' to bring the action in the transferee forum at the time of the commencement of the action*; i.e., *venue must have been proper* in the transferee district and the transferee court must have had power to command *jurisdiction over all of the defendants*. *Van Dusen v. Barrack*, [376 U.S. 612 (1964)]; *Hoffman v. Blaski*, [363 U.S. 335 (1960)]. Prior to ordering a transfer the district court must make a determination that the suit could have been rightly started in the transferee district. *Jones v. Valley Welding Supply Company*, 303 F.Supp. 9 (W.D.Pa. 1969). *If there is a 'real question' whether a plaintiff could have commenced the action originally in the transferee forum*, *Leyden v. Excello Corporation*, 188 F.Supp. 396 (D.N.J. 1960), *it is evident that he would not have an unqualified right to bring his cause in the transferee forum*.

431 F.2d at 24 (emphasis added). See also *Sunbelt Corp. v. Noble, Denton & Associates, Inc.*, 5 F.3d 28, 31-33 (3d Cir. 1993) (because one of defendants was not subject to personal jurisdiction in Texas, transfer pursuant to section 1404(a) was not proper because the Southern District of Texas was not a district in which the action "might have been brought"); *Yang v. Odom*, 409 F.Supp.2d 599, 604 (D.N.J. 2006) ("A district is one in which an action 'might have been brought' if that district has (1) subject matter jurisdiction over the claims; (2) personal

13

jurisdiction over the parties; and (3) is a proper venue."), citing *Shutte*, 431 F.2d at 24; *High River Ltd. P'ship v. Mylan Lab., Inc.*, 353 F.Supp.2d 487, 493 (M.D.Pa. 2005) ("in order to prevail on a motion to transfer venue under §1404(a), the moving party must demonstrate that venue, personal jurisdiction, and subject matter jurisdiction would all have been proper in the proposed transferee district."), citing *Hoffman*, 363 U.S. at 344 and *Shutte*, 431 F.2d at 24.

The determination of whether an action might have been brought in the transferee district is made on the basis of facts and circumstances existing at the time of the filing of the lawsuit. *Waste Distillation Tech., Inc. v. Pan American Res., Inc.*, 775 F.Supp. 759 (D.Del. 1991), citing *Hoffman*, 363 U.S. at 342-343. Thus, a defendant's subsequent consent or waiver of objections to jurisdiction in the transferee district has no bearing on whether the action "might have been brought" in the transferee district. *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 165 (3d Cir. 1981) ("The major holding in [*Hoffman*] . . . was that the phrase 'where (the action) might have been brought' means a district where the plaintiff had a right to bring the suit originally and does not include those districts in which the defendants consent to jurisdiction or venue."), citing *Hoffman*, 363 U.S. at 342-44.

For a civil action wherein jurisdiction is founded only on diversity of citizenship, the action may be brought only in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . , or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a) (1) and (3). For

14

purposes of the venue statute,[5] a "defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c).

Other than the forum selection clause in Tacom's Distribution Agreements with Vangura, Minnesota has little connection to the case, and is not a judicial district in which a substantial part of the events or omissions giving rise to Vangura's claims occurred, defendants' protestations to the contrary notwithstanding. Subsection (2) does not supply venue in Minnesota. Minnesota only has venue, therefore, if any defendant resides in Minnesota, provided "all defendants reside in the same State," or if "any defendant is subject to personal jurisdiction" in Minnesota "at the time the action is commenced," provided "there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a)(1) and (3).

Minnesota has jurisdiction over the following defendants: Tacom, pursuant to the forum selection clause and in light of Tacom's regular and systematic contacts that establish general jurisdiction with Minnesota as shown in the supporting materials; American Silestone, pursuant to undisputed affidavits that establish general jurisdiction over American Silestone in Minnesota because of regular and systematic contacts; and the Court will assume, for purposes of this

---

[5] By contrast, for purposes of diversity of citizenship jurisdiction, a corporation has dual citizenship and is deemed a citizen of two states: its state of incorporation and the state of its principal place of business, which may or may not be synonymous with "principal office". 28 U.S.C. § 1332(c)(1); *Mennen Co. v. Atlantic Mut. Ins. Co.*, 147 F.3d 287 (3d Cir. 1998). A corporation may have offices and do business in numerous states, perhaps even all of them, but it is not a citizen of every state in which it does business; to the contrary, a corporation has only one principal place of business for purposes of establishing diversity jurisdiction. *Bruesewitz v. Wyeth, Inc.*, 2006 WL 782437 *2 (E.D. Pa. 2006), citing *Kelly v. U.S. Steel Corp.*, 284 F.2d 850, 853 (3d Cir. 1960) (a corporation may have "literally dozens of important places of business one of which we must pick out as the principal one because the statute says so.").

motion, that Minnesota would have jurisdiction over Mr. Contreras, as a principal and agent for Tacom.[6] However, personal jurisdiction (and, therefore, venue) over Continental Kitchens is, at best, problematic, and there is a "real question" about Minnesota's jurisdiction and venue over this defendant.

There is no evidence or even suggestion that Continental Kitchens has ever conducted any business in Minnesota. Defendants argue that Tacom's distribution agreement with Continental Kitchens also contains a Minnesota venue selection and choice of law clause, and that *this clause* serves to give Minnesota jurisdiction (and therefore venue) over Continental Kitchens for all purposes. Defendants' Joint Reply (doc. no. 46), at 4. In Minnesota, general jurisdiction is predicated on continuous and systematic contacts with the forum state; specific jurisdiction is based on the defendant's specific contacts with the state wherein the cause of action arises out of those contacts. See, e.g., *Minnesota Min. and Mfg. Co. v. Nippon Carbide Indus. Co., Inc.*, 63 F.3d 694, 697 (8th Cir. 1995) ("minimum contacts" test is met if a defendant has deliberately engaged in activities, such as having created continuing obligations, within a state, and such actions invoke the benefits and protection of a state's laws; one of essential foundations of personal jurisdiction exists when a controversy is related to or arises out of a defendant's contacts with the forum, and there is a relationship among the defendant, the forum, and the litigation).

The mere existence of a forum selection clause in Continental Kitchens' distribution

---

[6] There is considerable dispute over Mr. Contreras' residency, citizenship and Minnesota's personal jurisdiction over him. Because there is a "real question" about personal jurisdiction over Continental Kitchens, however, there is no need to resolve these issues regarding Mr. Contreras.

16

agreement with Tacom does not suffice to give Minnesota general jurisdiction over Continental Kitchens for all purposes, or specific jurisdiction over it with regard to the claims raised herein, which do not arise from Continental Kitchens' agreement with Tacom. To the contrary, Vangura's claims arise from its Distribution Agreements with Tacom, and from defendants alleged interference with its Distribution Agreements and with Vangura's prospective business relations forged from the Distribution Agreements, *not* in any way from Continental Kitchens' distribution agreement with Tacom. The cases cited in Defendants' Joint Reply (doc. no. 46), at 4, do not support the proposition that a Minnesota forum selection clause in Continental Kitchens' agreement with Tacom gives Minnesota general jurisdiction over Continental Kitchens even in the absence of any regular or systematic contacts with that forum, or specific jurisdiction over Vangura's claims of interference with its Distribution Agreements with Tacom and with prospective business relations in Vangura's Distribution Territory, which does not include Minnesota.

Minnesota does not have venue pursuant to section 1391(a)(1), because it is not "a judicial district where any defendant resides, if *all defendants reside in the same State*," nor pursuant to section 1391(a)(3), because although it is "a judicial district in which *any* defendant is subject to personal jurisdiction at the time the action is commenced," the Western District of Pennsylvania is a "district in which the action may otherwise be brought." Thus, there is *at least* a "real question" whether Minnesota would have had jurisdiction or venue over Continental Kitchens, and whether Vangura could have commenced this action originally in Minnesota; it is evident, therefore, that Vangura did not have an "unqualified right" to bring its claims against Continental Kitchens in the transferee forum. Accordingly, defendants cannot meet their burden

17

of showing that Minnesota is a district where this action "might have been brought" at the time the action was commenced, 28 U.S.C. § 1404(a), and transfer cannot be effectuated to that district.

**2. Balancing the section 1404(a) private and public factors.**

Additionally, even if the transferor court finds that the transferee court would have venue and jurisdiction over a case, the transferor court must still weigh the competing private and public interests to determine which court is the most convenient forum. This Court has *no doubt* that Pennsylvania is a much more convenient forum than Minnesota for this litigation.

Section 1404(a) was "intended to vest district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara*, 55 F.3d at 883, citing *Ricoh Corp.*, 487 U.S. at 30-31. Section 1404(a) provides for transfer for "the convenience of the parties and witnesses [and] in the interest of justice. . . ." In addition to these statutory considerations, the United States Court of Appeals for the Third Circuit has enumerated additional private and public interests that the Court may consider in deciding whether to grant a motion to transfer:

> The private interests [include]: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses - but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of the books and records (similarly limited to the extent that the files could not be produced in the alternative forum). The public interests [include]: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; and the familiarity of the trial judge with the applicable state law in

diversity cases.

*Jumara*, 55 F.3d at 879-80 (citations and internal quotations omitted).

While section 1404(a) requires a district court to balance a number of case specific factors, the presence of a contractual forum selection clause is a significant, but not dispositive, factor that figures centrally in the district court's calculus. *Ricoh Corp.*, 487 U.S. at 30. A forum selection clause must be given "substantial consideration," since such a clause is the manifestation of the contracting parties' preferences as to a convenient forum. *Jumara*, 55 F.3d at 880. The forum selection clause in this case is between Vangura and Tacom only, and it is only applicable, by its terms, to any "claim or action for breach of this Agreement."

It is quite possible that the Court would interpret this forum selection clause as extending to closely related tort claims against the contracting party (Tacom) based upon the underlying Agreement, and perhaps to Mr. Contreras, but it would be too much of a stretch to read the forum selection clause to cover the tort claims against Continental Kitchens and American Silestone for interference with the Tacom Agreements and with prospective business relations with third parties. As we have seen, the forum selection clause in the Distribution Agreements does not give Minnesota jurisdiction or venue over Continental Kitchens (or the other non-contracting defendants, which might be subject to Minnesota's jurisdiction and venue for other reasons).

Moreover, Tacom is not a Minnesota corporation, although at one time it might have "run" its operation from Minnesota. In their Joint Motion to Dismiss or Transfer, defendants state that Minnesota was chosen in the Distribution Agreements in this case and in other distribution agreements (including its Agreement with Continental Kitchens because the "Silestone operations were previously run out of Minnesota and because [Tacom's] General

19

Counsel and Corporate Secretary's offices are located in Minnesota." Joint Motion to Dismiss or Transfer at 8. Defendants also assert that the initial Distribution Agreement was negotiated in Minnesota and that Vangura sent the signed Agreement to Mr. Contreras in Minnesota, but there certainly has never been any performance of, or interference with, the Distribution Agreements in Minnesota. Thus, Minnesota has little or nothing to do with this case, other than being a passive repository of federal court venue because it is the designated forum in a forum selection clause.

Conversely, there are several states which were, allegedly, the locus of interfering and tortious conduct by defendants, including Pennsylvania (especially), Ohio, West Virginia and Maryland, but *not* including Minnesota. Pennsylvania would seem to have the paramount interest in the orderly pursuit of business opportunities by commercial entities operating within its borders. Further, the vast majority of witnesses and documents appear to be located in Pennsylvania or contiguous states, and, as far as the record shows, no witnesses are located in Minnesota.

Under all of the circumstances, this Court does not hesitate to find Pennsylvania the most convenient forum.

For all of the reasons set forth above, the Court will deny defendants' alternative motion to transfer the case to the District of Minnesota pursuant to section 1404(a).

An appropriate order will be entered.

**Dated: October 7, 2008**

                                                s/ Arthur J. Schwab
                                                Arthur J. Schwab
                                                United States District Judge

cc:     All Registered ECF Counsel and Parties